# Appointment of Members of the Board of Directors of the Commission on National and Community Service

The unconstitutional restrictions on the President's appointment power contained in the National and Community Service Act of 1990 are severable from the remainder of the Act.

With one exception, the programs established under title I of the Act may not be implemented before the President has appointed members of the Board of Directors of the Commission on National and Community Service.

There is no statutory prohibition against officers currently holding other advice-and-consent positions serving on the Board, so long as the person receives only one salary, the positions are not "incompatible" from the standpoint of public policy, and there is no augmentation of relevant appropriations.

December 28, 1990

MEMORANDUM OPINION FOR
THE ASSOCIATE COUNSEL TO THE PRESIDENT

This responds to your request for an opinion concerning the appointment of members of the Board of Directors of the newly-established Commission on National and Community Service (the "Commission"). *See* Memorandum for John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, from Nelson Lund, Associate Counsel to the President (Dec. 14, 1990). The National and Community Service Act of 1990, Pub. L. No. 101-610, 104 Stat. 3127 (codified at 42 U.S.C. §§ 12501-12862 (Supp. II 1990)) (the "Act"), which creates the Commission, contains a number of unconstitutional restrictions on the President's power to appoint such members. *See* Statement on Signing the National and Community Service Act of 1990, Pub. Papers of George Bush 1613 (Nov. 16, 1990). You have asked whether these restrictions are severable from the remainder of the Act. In addition, you have asked whether the programs established under title I of the Act may be implemented before the President has appointed members of the Board, and whether officers currently holding other advice-and-consent positions may serve on the Board.

We believe that the unconstitutional provisions are severable from the remainder of the Act, and that, with one exception, the programs established

157

by title I may not be implemented before the President appoints members of the Board. With regard to your third question, there is no problem in principle with persons having two simultaneous appointments in the executive branch. Nevertheless, dual appointments must be examined on an individual basis to assure that the offices are not incompatible from the standpoint of public policy. We would be pleased to consider the legality of any particular nominations you wish us to review.

Title I of the Act establishes several grant programs to be administered by the Commission. § 190. The purpose of the grants is to enable recipients "to carry out" specified "national or community service programs." § 102. Subtitle B authorizes the Commission, in consultation with the Secretary of Education, to make grants to States or local applicants in connection with school-aged service programs, § 111, and "to make grants to, and enter into contracts with, institutions of higher education" and other parties in connection with community service projects. § 118. Subtitle C gives the Commission power to make grants to States, local applicants, and certain federal agencies "for the creation or expansion of full-time or summer youth corps programs." § 121. Under subtitle D, the Commission may make grants to States "for the creation of full- and part-time national and community service programs." § 141. Finally, subtitle E authorizes the Commission to make grants to States, Indian tribes, specified federal agencies, and other parties in connection with certain "innovative" and demonstration programs. §§ 157, 160, 165-167.

The Act provides that the Commission is to be administered by a Board of Directors (the "Board") consisting of twenty-one members appointed by the President with the advice and consent of the Senate. § 190(a), (b)(1)(A).[1] Section 190(b) imposes several restrictions upon the President's authority to make such appointments. It provides, for instance, that the Board must "be balanced according to the race, ethnicity[,] age and gender of its members," § 190(b)(1)(A); must contain "[n]ot more than [eleven] members of . . . the same political party," § 190(b)(2); and must include seven members chosen from among persons nominated by the Speaker of the House of Representatives, and seven from among persons nominated by the Majority Leader of the Senate. § 190(b)(3).

As the President explained in signing the Act, requirements such as these are unconstitutional restrictions on his authority to appoint officers of the United States. See Pub. Papers of George Bush at 1613-14. See also Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 482 (1989) (Kennedy, J., concurring); Buckley v. Valeo, 424 U.S. 1, 126 (1976) (per curiam). We believe, however, that these unconstitutional provisions may be severed from the remainder of the Act.

The Act contains no severability clause. Nonetheless, even in the absence

---

[1] In addition, the Secretary of Education, the Secretary of Health and Human Services, the Secretary of Labor, the Secretary of the Interior, the Secretary of Agriculture, and the Director of the ACTION agency serve as ex-officio members of the Board. § 190(b)(1)(B).

of such a clause, there exists a presumption in favor of the severability of unconstitutional provisions so long as what remains of the statute is capable of functioning independently. *See Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984) (plurality opinion); *Alaska Airlines v. Donovan*, 766 F.2d 1550, 1560 (D.C. Cir. 1985), *aff'd sub nom. Alaska Airlines v. Brock*, 480 U.S. 678 (1987). As the Supreme Court has explained on numerous occasions, "'[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.'" *Alaska Airlines v. Brock*, 480 U.S. 678, 684 (1987) (quoting *Buckley*, 424 U.S. at 108). This presumption may be overcome by evidence that, absent the unconstitutional provisions, the statute will not function "in a *manner* consistent with the intent of Congress," *id.* at 685, that is, by evidence that Congress would not have enacted the statute without the unconstitutional provisions. Such evidence may be gleaned from the language and structure of the statute as well as its legislative history. *Id.* at 687.

We do not believe that the presumption of severability may be overcome in this case. The Commission and the grant programs it administers would remain fully operative in the absence of the unconstitutional provisions. In addition, the Act does not suggest that the provisions were so important to Congress that it would not have passed the Act without them. Manifestly, Congress thought it necessary to have a federal entity administer the title I programs. There is no evidence, however, that the precise composition of the board administering that entity was also essential to Congress' plan. Indeed, in order to assure that the Commission would administer the various grant programs in accordance with congressional intent, Congress placed substantive limitations on the Commission's discretion.[2] In comparison with these substantive limitations, restrictions on the composition of the Board are of only minor significance. There is nothing in the legislative history of the Act to support a different conclusion.[3]

---

[2] *See, e.g.*, § 115(a), (b) (specifying priorities for certain grants under subtitle B); § 122 (specifying requirements for allocation of funds for grants under subtitle C); § 129 (directing that the Commission give preference to certain programs under subtitle C); § 142 (specifying criteria for awarding of grants under subtitle D); § 157 (specifying criteria for awarding of grants for certain programs under subtitle E); § 171 (placing limit on number of grants to be made by the Commission during each fiscal year); § 179 (specifying criteria for evaluation of programs by the Commission).

[3] The relevant legislative history may be summarized briefly as follows. As introduced by Senator Kennedy, the Act initially provided for a nonprofit "'Corporation for National Service'" to be directed by an eleven-member "National Service Board" appointed by the President with the advice and consent of the Senate. S. 1430, 101st Cong., 1st Sess. §§ 402(a), 403(a), 135 Cong. Rec. 16,708 (1989). This version of the Act also contained unconstitutional restrictions on the President's authority to appoint officers of the United States. *Id. See also* S. Rep. No. 176, 101st Cong., 1st Sess 64 (1989) (discussing membership of the proposed National Service Board). On the Senate floor, Senator Kennedy substituted another version of the Act that replaced the Corporation with the Commission, explaining that the substitute contained "some technical changes" made at the behest of the Administration. 136 Cong. Rec. 2731 (1990) (statement of Sen. Kennedy). *See also id.* at 2732 (statements of Sens. Hatch and Kennedy). Section 190 took its final form in conference; the only relevant statement in the Conference Report indicates that the House insisted on a provision adding the secretaries of certain departments and the Director of ACTION to the Board as ex-officio members. *See* H.R. Conf. Rep. No. 893, 101st Cong., 2d Sess. 69 (1990).

You also ask whether the grant programs established by title I may be implemented before the President appoints members of the Board. We do not believe so. Section 190 makes clear that the Commission, or more precisely the Board, is responsible for administering such programs, or for delegating that responsibility to other federal agencies. *See* § 190(c)(2), (4). In addition, section 190 provides that the Board must appoint an "Executive Director," who in turn may appoint up to ten "technical employees to administer the Committee [sic]." § 190(d)(1), (e). Until the President appoints members of the Board, then, the Commission is inoperative, and the grant programs cannot be implemented.[4]

Finally, you ask whether the President may appoint as Board members persons who currently serve as full-time federal employees. As we have explained in the past, there is no statutory prohibition against a person holding two offices within the executive branch, so long as the person receives only one salary, the positions are not "incompatible" from the standpoint of public policy,[5] and there is no augmentation of relevant appropriations. *See Dual Office of Chief Judge of Court of Veterans Appeals and Director of the Office of Government Ethics*, 13 Op. O.L.C. 241 (1989); Intrater Memorandum. Nonetheless, determinations of the legality of dual appointments must be made on an individual basis. Of course, we would be pleased to consider the propriety of any specific nominations you wish us to review.

JOHN O. McGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[4] There is an exception. Section 182(a) provides that "[t]he head of each Federal agency and department shall design and implement a comprehensive strategy to involve employees of such agencies and departments in partnership programs with elementary schools and secondary schools." These "Partnerships With Schools" programs may be implemented absent the appointment of Board members.

[5] "The operative principle is that two offices are incompatible if public policy would make it improper for one person to perform both functions. Examples of incompatibility are where the official interests of the positions conflict, where one office adjudicates matters in which the other is a party, or where Congress intended that one office serve as a check on the other. Application of this standard thus depends on the statutory or constitutional duties of the offices involved." Memorandum for Arnold Intrater, General Counsel, Office of White House Administration, from John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel at 3-4 (March 1, 1988) (citation omitted) ("Intrater Memorandum").